| | |
|---|---|
| 1 | BROWN WHITE & NEWHOUSE LLP |
| | THOMAS M. BROWN (Bar No. 117449) |
| 2 | tbrown@brownwhitelaw.com |
| | NANNINA L. ANGIONI (Bar No. 238052) |
| 3 | nangioni@brownwhitelaw.com |
| | 333 South Hope Street, 40th Floor |
| 4 | Los Angeles, California 90071-1406 |
| 5 | Telephone:  213. 613.0500 |
| | Facsimile:   213.613.0550 |
| 6 | |
| 7 | Attorneys for Plaintiffs Downey Firemen's Association – Local 3473, et al. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DOWNEY FIREMEN'S ASSOCIATION, LOCAL 3473, a non-profit organization, on behalf of itself and its current and former members, STEVEN DAVIS, an individual, DANIEL RASMUSSEN, an individual, THOMAS DANIERI, an individual, JAY IBEY, an individual, SCOTT DEVEREUX, an individual, DAN HURLOCK, an individual, TED MATSUMOTO, an individual, FRANK CULHNO, an individual, RYAN SCHLEIGER, an individual, KEVIN KIM, an individual, IVAN ORLOFF, an individual, DAVID BLADES, an individual, JEFF SIMMONS, an individual, and JOSE GARCIA, an individual, | | Case No.: 14-cv-01213-CJC-RNB |
| | | **OPPOSITION TO DEFENDANT CITY OF DOWNEY'S MOTION TO DISMISS CLAIMS BY DFA AND TED MATSUMOTO** |
| | | Judge: Honorable Cormac J. Carney |
| | | Date:    November 17, 2014 |
| | | Time:   1:30 p.m. |
| | | Dept.:   9-B |
| | | Complaint filed:  July 31, 2014 |
| Plaintiffs, | | |
| v. | | |
| CITY OF DOWNEY, a municipal corporation, LONNIE CROOM, an individual, and DOES 1 through 10, inclusive, | | |
| Defendants. | | |

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I. INTRODUCTION .............................................................................................. 1

II. STATEMENT OF RELEVANT FACTS .......................................................... 2

III. LEGAL ARGUMENT ....................................................................................... 4

    A. LEGAL STANDARD ............................................................................ 4

    B. THE SAC SUFFICIENTLY ALLEGES THAT THE DFA SUSTAINED DAMAGES, INCLUDING INCURRED ATTORNEYS' FEES AND EXPENSES, AS RESULT OF THE CITY'S UNLAWFUL RETALIATION .......................................... 5

    C. THE DFA HAS STANDING UNDER THE LAW TO PURSUE RECOVERY ON BEHALF OF ITS MEMBERS FOR THE CITY'S RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 ....................................................................................... 8

    D. MATSUMOTO ALLEGES THAT THE CITY RETALIATED AGAINST HIM BY REFUSING TO HIRE HIS SON, WHICH QUALIFIES AS AN ADVERSE EMPLOYMENT ACTION UNDER SECTION 1983 ............................................................................ 11

    E. THE CITY'S REQUEST FOR A MORE DEFINITE STATEMENT IS PROCEDURALLY DEFECTIVE AND UNNECESSARY BECAUSE THE SAC IS NOT UNINTELLIGIBLE AND CLEARLY SATISFIES PLAINTIFFS' PLEADING OBLIGATIONS UNDER THE FRCP ........................................................................................................ 14

    F. IN THE EVENT THE COURT IS INCLINED TO GRANT THE CITY'S MOTION, PLAINTIFFS RESPECTFULLY REQUESTS LEAVE TO AMEND THE COMPLAINT ...................... 15

IV. CONCLUSION ................................................................................................ 16

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

Page

**Cases**

*Allee v. Medrano*,
 416 U.S. 802 (1974) .................................................................................................. 8

*American Fed. of State, Co., & Mun. Emp. V. Woodward*,
 406 F.2d 137 (8th Cir. 1969) .................................................................................... 8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................ 12, 15

*Balistreri v. Pacifica Police Department*,
 901 F.2d 696 (9th Cir. 1988) .................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................... 5, 12

*Cahill v. Liberty Mutual Insurance Co.*,
 80 F.3d 336 (9th Cir. 1996) ..................................................................................... 5

*Coszalter v. City of Salem*,
 320 F.3d 968 (9th Cir. 2003) .................................................................................. 13

*Cousins v. Lockyer*,
 568 F.3d 1063 (9th Cir. 2009) ................................................................................ 12

*De La Cruz v. Tormey*,
 582 F.2d 45, 48 (9th Cir. 1978) ................................................................................ 5

*Faulkner v. ADT Sec. Servs., Inc.*,
 706 F.3d 1017 (9th Cir. 2013) ................................................................................ 11

*Gilligan v. Jamco Development Corp.*,
 108 F.3d 246 (9th Cir. 1997) .................................................................................... 5

*Gomper v. VISX, Inc.*,
 298 F.3d 893 (9th Cir. 2002) .................................................................................. 16

*Hospital Council of W. Pa v. City of Pittsburgh*,
 949 F.2d 83 (3d Cir. 1991) ..................................................................................... 10

*Hunt v. Washington Apple Advertising Commission*,
 432 U.S. 333 (1977) ............................................................................................ 9, 10

*In re 2TheMart.com, Inc.*,
 114 F.Supp.2d 955 (C.D. Cal. 2000) ..................................................................... 12

*Lujan v. Defenders of Wildlife*
 (1992) 504 U.S. 555 ................................................................................................. 6

*NAACP v. Alabama*
 (1958) 357 U.S. 449 ................................................................................................. 6

# TABLE OF AUTHORITIES

Page

*Owens v. Kaiser Foundation Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) .................................................................................. 16

*Retired Chicago Police Association v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ...................................................................................... 10

*Rutan v. Republican Party*,
  497 U.S. 62 (1990) .................................................................................................. 13

*San Bernardino Public Employees Ass'n v. Stout*,
  946 F.Supp. 790 (C.D. Cal. 1996) .......................................................................... 15

*Thompson v. North American Stainless, L.P.*,
  131 S. Ct. 863 (2011) .............................................................................................. 13

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) .................................................................................... 5

*United Union Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance
  Corp. of America*,
   919 F.2d 1398 (9th Cir. 1990) .................................................................................. 8

*Usher v. City of Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) .................................................................................. 12

*Van Buskirk v. Cable News Network, Inc.*
  284 F.3d 970 (9th Cir. 1988) .................................................................................... 5

*Walling v. Beverly Enterprises*,
  476 F.2d 393 (9th Cir. 1973) .................................................................................... 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................................... 8, 9, 10

**Statutes**

42 U.S.C. § 1983 ................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 4

Fed. R. Civ. P. 15(a)(2) ............................................................................................. 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendant City of Downey City's ("City's") meritless Motion to Dismiss ("Motion") follows extensive meet and confer efforts and two amendments to the Complaint. Those efforts have been done in vain, since the City asserted the same arguments that Plaintiffs addressed through their Second Amended Complaint ("SAC"). Evidently, the City's aim was motion practice, not resolution.

The City's Motion advances four arguments, only three of which the City addressed during the parties' meet and confer communications.

First, the City contends that Plaintiff Downey Firemen's Association, Local 3473 ("DFA") is not a proper plaintiff because it fails to allege that it suffered an injury itself, as an entity, separate from any injury to its members. The City is wrong. The DFA specifically alleges that it incurred attorneys' fees and expenses, and had to divert time and resources toward responding to meritless discipline investigations, complaints, and unfair grievance processes which the City pursued in retaliation for the Vote of No Confidence. SAC ¶ 84. DFA's economic damages constitute an injury in fact under the law. The DFA is a proper plaintiff in this action.

Second, the City argues that the DFA lacks standing sue on behalf of its members. Once again the City is wrong. As an association, the DFA has standing to bring claims on its members' behalf. Further, because the damages the DFA claims on behalf of its members are easily discernible and do not require individualized inquiries or participation from each individual DFA member, the DFA's single claim for relief satisfies associational standing. The DFA is permitted to recover damages suffered by its membership as a whole.

Third, the City asks the Court to order Plaintiffs to provide a more definite statement regarding the DFA's scope of representation. This request is procedurally defective because the City never met and conferred on this issue. Even if it had, the

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

1  request still fails substantively because the SAC is neither unintelligible nor so vague
2  that the City is unable to prepare a response – in fact it is not vague at all. The SAC
3  clearly alleges that the DFA's 49 members who signed the Vote of No Confidence
4  subsequently experienced pervasive and significant retaliation. SAC ¶¶ 35-38. The
5  scope of the DFA's representation is clear.
6        Finally, the City argues that Defendant Ted Matsumoto's ("Matsumoto's") claim
7  fails because he can only speculate that the City would have hired his son but for
8  Matsumoto signing the Vote of No Confidence. The City either misunderstands Rule
9  12(b)(6)'s purpose or deliberately seeks to use this vehicle, improperly, as a motion for
10 summary judgment. At this stage, Matsumoto is not obligated to prove his allegations
11 with evidence. Rather, he must only allege facts which if taken as true, along with all
12 reasonable inferences in his favor, demonstrate that he suffered an adverse employment
13 action as a result of engaging in protected activity. Matsumoto sufficiently alleges that
14 because he signed the Vote of No Confidence, the City refused to hire his son despite
15 his son having passed all tests, obtained all certifications, and ranked among the highest
16 of all candidates. SAC ¶ 56. These allegations are sufficient to state a Section 1983
17 claim. Established case law confirms that such conduct qualifies as an adverse
18 employment action because it would dissuade an employee from engaging in protected
19 conduct. Matsumoto has alleged facts sufficient to state a claim and he should be
20 permitted an opportunity to conduct discovery to obtain admissible and relevant
21 evidence proving that but for his signing the Vote of No Confidence, the City would
22 have hired his son. Dismissal at this stage would be premature and inconsistent with
23 binding legal authorities.
24       The City's Motion is meritless and the court should deny it in its entirety.

## II.
## STATEMENT OF RELEVANT FACTS

27       After Defendants deceived them into agreeing to reduce their pay by 5.5% and
28 significantly reduce their medical health plan, the DFA learned that its then-Fire Chief,

2

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

Defendant Lonnie Croom ("Croom") had agreed to a quid pro quo scheme with the City's then-Mayor Mario Guerra to undertake actions detrimental to the DFA for their own personal benefit. SAC ¶¶ 23-33. Specifically, Croom and Guerra agreed that if Croom "tanked" the City's prospect of contracting fire services with Los Angeles County, Guerra would ensure that Croom receive a 5.5% pay raise. *Id.* On May 14, 2013, Croom upheld his end of the deal when he misrepresented a Feasibility Study's facts and figures in order to persuade the City Council to vote against conducting a further study into contracting out fire services. *Id.* at ¶ 33. Thereafter, Guerra upheld his end of the deal when the City gave Croom a 5.5% pay increase. *Id.* at ¶ 34.

On May 19, 2013, the all 49 members of the DFA unanimously signed a Vote of No Confidence in Croom (the "Vote") based in part on this conduct. *Id.* at ¶ 35. When Croom received the Vote, he went ballistic, shouted profanities, and declared "This means war!" *Id.* at ¶ 36. The City's Councilmembers reacted similarly. Councilmembers stonewalled DFA's efforts to explain the Vote, berated and shouted profanities at DFA leadership, and called DFA members a "disgrace." *Id.* at ¶ 37. For the next year and a half, through the present, the City and Croom (collectively "Defendants") have pursued a campaign of retaliatory adverse employment actions aimed at punishing the DFA and its members who signed the Vote. *Id.* at ¶¶ 39 – 78. Defendants' retaliatory actions include:

- refusing to promote DFA members to a vacant Battalion Chief position (*id.* at ¶¶ 41-48);
- prematurely terminating a Battalion Chief eligibility list (*id.* at ¶ 44);
- pursuing frivolous discipline investigations against DFA leadership and its members (*id.* at ¶¶ 49 – 55);
- refusing to hire a DFA member's son who passed all tests, held all necessary certifications, and ranked among the top of all candidates (*id.* at ¶ 56);
- depriving DFA members of at least 210 shifts of overtime pay (*id.* at ¶¶ 45-46);

3
**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

- refusing to reinstate DFA members to paramedic positions despite the City's urgent need for paramedic firefighters (*id.* at ¶¶ 57-58);
- threatening to sound emergency dispatch alarms throughout fire stations at early morning hours (*id.* at ¶ 59(c));
- eliminating Fire Prevention Bureau positions, resulting in reduced overtime opportunities for DFA members (*id.* at ¶ 59 (e));
- canceling badge pinning ceremonies (*id.* at ¶ 59(g));
- refusing to promote DFA members to vacant positions (*id.* at ¶ 59(k)); and
- refusing to process DFA's and its members' grievances in good faith (*id.* at ¶ 59(l)).

On December 23, 2013, the DFA on behalf of itself and its 49 members who signed the Vote, filed a Tort Claim pursuant to California Government Code section 910, et seq. (the "Tort Claim"). *Id.* at ¶ 60. The Tort Claim detailed the rampant retaliation that the DFA and its members had experienced because of the Vote. *Id.* at ¶ 60. Although not a prerequisite for filing a Section 1983 claim, the DFA filed the Tort Claim in an effort to encourage the City to put an end to the retaliation. *Id.* Unfortunately, rather than undertake efforts to resolve the adverse employment actions, the City publicly ratified the retaliation and encouraged this unlawful behavior. *Id.* at ¶¶ 61-64. Thus, the DFA and 14 of its members filed the instant lawsuit. Thereafter, the City's Councilmember Mario Guerra again publicly berated Plaintiffs, calling them "shameful," and further ratified Defendants' unlawful conduct. *Id.* ¶¶ 74-78.

## III.
## LEGAL ARGUMENT

### A. LEGAL STANDARD

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 standard contains a "powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.

4

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

1997) (citation omitted).  A complaint should not be found deficient even if it is apparent that "a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Further, Rule 12(b)(6) motions are "viewed with disfavor in the federal courts." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  The Rule permits dismissal of a claim only in "extraordinary" cases, where there is either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *Balistreri v. Pacifica Police Department*, 901 F.2d 696,699 (9th Cir. 1988).  In ruling on a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.* 284 F.3d 970, 977 (9th Cir. 1988).  The court must (1) construe the complaint in a light most favorable to plaintiff, (2) presume that all factual allegations are true, and (3) draw all reasonable inferences in plaintiff's favor.  *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Moreover, ambiguities are resolved in favor of upholding the pleading. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

### B. THE SAC SUFFICIENTLY ALLEGES THAT THE DFA SUSTAINED DAMAGES, INCLUDING INCURRED ATTORNEYS' FEES AND EXPENSES, AS RESULT OF THE CITY'S UNLAWFUL RETALIATION

Even though the parties met and conferred on the issue and the DFA filed the SAC to address the City's concerns, the City persists in arguing that the DFA does not allege that it sustained an injury itself.  The City is wrong.  The SAC alleges that the DFA, separate and apart from the other plaintiffs and its members, sustained damages including attorneys' fees and expenses as a direct result of the City's retaliatory discipline investigations, adverse actions, and mishandling of grievances.  SAC at ¶ 84. Accordingly, the DFA is a proper plaintiff and the court should deny the City's Motion.

In its Motion, the City contends that "standing requires that a plaintiff has suffered an injury in fact which is concrete and not conjectural." Motion at 4:9-10.  The

1  City also concedes that where an association "suffers or will suffer economic harm, or
2  diminution in membership attributable to unlawful conduct," such injuries are sufficient
3  to confer standing. Motion at 4:16-18 (citing *Lujan v. Defenders of Wildlife* (1992) 504
4  U.S. 555, 559-60 and *NAACP v. Alabama* (1958) 357 U.S. 449, 459-60). The DFA
5  agrees and alleges these very injuries in its SAC. Specifically, the DFA alleges that it
6  sustained an injury in fact when it had to hire attorneys and divert resources toward
7  handling the numerous retaliatory discipline investigations, complaints, and mishandled
8  grievances that the City pursued in retaliation for the Vote. SAC at ¶ 84. These are
9  damages the DFA itself incurred as it represented its members through these retaliatory
10  proceedings; damages which qualify as an "injury in fact" under the law.
11      Indeed, the City's counsel even agreed as such during the parties' meet and
12  confer teleconferences preceding this Motion. Declaration of Nannina L. Angioni
13  ("Angioni Decl."), at ¶ 3. During these communications, counsel explained that the
14  DFA – separate and apart from the individual members – suffered an injury in fact
15  when it had to hire counsel and divert money and resources representing its members in
16  the retaliatory investigations, meetings, and grievances that followed the Vote. *Id.* The
17  City's counsel conceded that the DFA's own damages sufficed to confer standing, but
18  argued that the First Amended Complaint's allegations did not expressly refer to such
19  damages. *Id.* Thus, the parties filed a joint stipulation which permitted Plaintiffs to file
20  the SAC and continued the City's deadline to respond to the pleadings. The parties
21  filed their stipulation on September 16, 2014 and Plaintiffs filed the SAC on September
22  29, 2014.
23      As the parties agreed, the DFA's SAC expressly alleged: "As a direct result of
24  Defendants' acts and omissions, by and through their employees, agents, and
25  representatives, Plaintiffs also incurred attorneys' fees and expenses, and had to spend
26  time and resources responding to, defending themselves against, and otherwise handling
27  Defendants' retaliatory adverse employment actions." SAC at ¶ 84. The DFA thus
28  complied with the parties' agreement. Unfortunately, with this Motion, the City did not.

6

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

The City still contends that the DFA has failed to allege facts demonstrating that it sustained its own damages. The City is wrong. In pertinent part the SAC alleges that following the Vote, "Defendants embarked on a campaign of retaliation aimed at punishing DFA members for exercising their free speech rights with the Vote and for associating with each other through the DFA." SAC ¶ 38. The SAC continues alleging that "Defendants retaliates against DFA members by, among other things, initiating frivolous discipline investigations, proposing the imposition of excessive discipline, refusing to fill a vacant Battalion Chief position, refusing to hire a DFA member's son who fulfilled all Fire Department qualifications and ranked at the top of his testing group, and refusing to re-activate paramedics despite the Fire Department's need for paramedics." SAC ¶ 39. The SAC goes on to provide details regarding the City's retaliatory refusal to promote DFA members (SAC ¶¶ 41-46), frivolous and retaliatory discipline investigations (*id.* at ¶¶ 49-55), refusal to hire a DFA member's son (*id.* at ¶ 56), refusal to reinstate DFA paramedics (*id.* at ¶¶ 57-58) and refusal to process DFA's grievances in good faith (*id.* at ¶59(l)). The SAC also expressly alleges that the DFA, in response to this misconduct, **"incurred attorneys' fees and expenses, and had to spend time and resources responding to, defending themselves against, and otherwise handling Defendants' retaliatory adverse employment actions."** *Id.* at ¶ 84 (emphasis added).

Contrary to the City's assertions, the SAC quite clearly alleges that the DFA sustained an injury in fact, in retaliation for the Vote. The DFA's past economic damages, and future economic damages it will likely incur as the City's pattern and practice of retaliation continues, qualify as an "injury in fact" under the law. The City's decision to advance this argument here despite the issue being resolved by amendment is frivolous. The DFA is a proper plaintiff in this case and thus, the court should deny the City's Motion.

//

7

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

## C. THE DFA HAS STANDING UNDER THE LAW TO PURSUE RECOVERY ON BEHALF OF ITS MEMBERS FOR THE CITY'S RETALIATION IN VIOLATION OF 42 U.S.C. § 1983

The City contends that the DFA cannot recover monetary damages on behalf of its members because "[n]o federal court has allowed an association standing to seek monetary relief on behalf of its members." Motion at 5:9-25. The City is wrong and its reliance on the cases cited is misplaced. Federal courts have not uniformly prohibited associations from obtaining monetary relief on behalf of their members. Rather, federal courts – including the United States Supreme Court – have held that an association may sue in its members' place unless "individualized proof" and "individual participation" of each association member is required to determine damages. *See, United Union Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1400 (9th Cir. 1990) and *Warth v. Seldin*, 422 U.S. 490 (1975). However, when an association does not require individualized participation of each member to prove its damages, an association has standing to sue in a representative capacity.

A "union has standing as a named plaintiff to raise any of the claims that a member of the union would have standing to raise." *Allee v. Medrano*, 416 U.S. 802, n. 13 (1974). "Unions may sue under 42 U.S.C. §1983 as persons deprived of their rights secured by the Constitution and laws … and it has been implicitly recognized that protected First Amendment rights flow to unions as well as to their members and organizers." *Id.* (citing *American Fed. of State, Co., & Mun. Emp. V. Woodward*, 406 F.2d 137 (8th Cir. 1969) and *Carpenters Union v. Ritter's Café*, 315 U.S. 722 (1942))." In *Warth v. Seldin*, the Court held:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members … The association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit … So long as this can be established, and **so long as the nature of the claim and**

8
**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

**of the relief sought does not make the individual participation of each injured party indispensable to a proper resolution of the case, the association may be an appropriate representative of its members**, entitled to invoke the court's jurisdiction.

*Warth,* 422 U.S. at 512.

Here, DFA members who suffered an individualized injury have been named as separate plaintiffs; specifically, Steven Davis, Daniel Rasmussen, Thomas Danieri, Jay Ibey, Scott Devereux, Dan Hurlock, Ted Matsumoto, Frank Culhno, Ryan Schleiger, Kevin Kim, Ivan Orloff, David Blades, Jeff Simmons, and Jose Garcia. They have made their individual claims, and will prove their individual damages. ***Additionally***, the DFA seeks damages for ***its own injuries***, as detailed in section B above, as well as damages its members incurred which are not individualized and which do not require participation of each DFA member to resolve. This is proper.

An association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343 (1977). The City does not dispute that the DFA has satisfied the first two elements under *Hunt*. Rather, the City takes issue with the third, arguing that "each member's monetary damages are particular to the form of retaliation to which the individual member was allegedly subjected." Motion at 6:10-11. The City ignores the SAC's allegations.

The DFA does not allege that it intends as a co-plaintiff to recover damages for individualized injuries. Rather, the DFA alleges damages – such as 120 overtime shifts not awarded to captains and 90 overtime shifts not awarded to engineers - which do not require members' individual involvement at all. Certainly, the City would not have to question each individual DFA member to determine that 120 overtime shifts were not given to DFA captains. This damages evidence would be gleaned from documentation

9

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

readily available. Not one of the City's cited cases hold that an association is prohibited from recovering damages on behalf of its membership when the damages analysis **does not** require individual participation from each of its members. The City's reliance on its authorities is therefore misplaced.

The claim asserted and the relief requested affects the membership as a whole. Moreover, to the extent that any of the DFA's claims on behalf of its members – separate from the claims of those members who are named as separate plaintiffs – would require participation of *some* members, the DFA can prove damages with a sampling of evidence from a small portion of members. This is proper.

For example, in *Hospital Council of W. Pa v. City of Pittsburgh*, 949 F.2d 83 (3d Cir. 1991), an association sued various cities alleging that their practice of coercing tax-exempt hospitals into making payments in order to obtain zoning approval, protect their tax exempt status, and secure other government benefits was unconstitutional. *Id.* at 85. Finding that the association **could** establish standing to sue on behalf of its members, the court explained that although evidence would be needed from certain individual hospitals and their employees in order to prove damages, the participation of all individual members was unnecessary and therefore associational standing was appropriate. *Id.* at 89-90. The court in *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) similarly reasoned that although some association members would need to submit evidence to prove the association's case for contract breach, because the active participation of each member was not required, associational standing was established. *Id.* at 590. There, the Court specifically noted:

> We can discern no indication in *Warth, Hunt,* or *Brock* that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. Such a stringent limitation on representation in all standing cannot be squared with the Court's assessment in *Brock* of the efficiencies for both the litigant and the judicial system from the use of representational standing.

*Id.* at 601-02.

1  Here, the pattern and practice of retaliation applied equally to all DFA members.
2  Those members which suffered an individualized injury have already been named as
3  separate plaintiffs in this case.  As to the damages sustained by the DFA members as a
4  whole – such as failure to award overtime, threats to change all employees' vacation
5  benefits, threats to sound alarms at all stations at various hours, cancellations of award
6  and recognition ceremonies, and a refusal to allow members to work at City Hall during
7  the week – these retaliatory actions apply equally to all members and do not require the
8  individual participation of every member to evaluate.  Similarly, an individualized
9  inquiry is unnecessary to determine the amount of attorneys' fees damages incurred
10 because of retaliation.  These injuries are not peculiar to individual members, but rather
11 the membership as a whole suffered.  The DFA properly alleged facts sufficient to
12 demonstrate that it has standing, as an association, to seek recovery on behalf of its
13 members.  The court should therefore deny the City's Motion.

### D. MATSUMOTO ALLEGES THAT THE CITY RETALIATED AGAINST HIM BY REFUSING TO HIRE HIS SON, WHICH QUALIFIES AS AN ADVERSE EMPLOYMENT ACTION UNDER SECTION 1983

In its Motion, the City argues that the Court should dismiss Plaintiff Ted Matsumoto ("Matsumoto") from this action because his claim is "based on conjecture that his son *would have been hired* by the City absent Matsumoto having engaged in protected activity under the First Amendment."  Motion at 9:7-9 (emphasis in original). The City appears to request relief more appropriately sought via summary judgment rather than a Rule 12(b)(6) motion to dismiss.  Whether Matsumoto can ultimately prove, with admissible evidence, that the City's decision to not hire his son was motivated by Matsumoto's Free Speech activities is a question not suitably addressed with a Rule 12(b)(6) motion.

When evaluating a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v.*

1  *Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). After accepting all non-conclusory
2  allegations as true and drawing all reasonable inferences in favor of the plaintiff, the
3  court must determine whether the complaint alleges a plausible claim to relief. *Ashcroft*
4  *v. Iqbal*, 556 U.S. 662, 679-80 (2009). "A claim has facial plausibility when the
5  plaintiff pleads factual content that allows the court to draw the reasonable inference
6  that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550
7  U.S. at 556). Moreover, "[t]he issue **is not whether the plaintiff will ultimately**
8  **prevail**, but whether the plaintiff is entitled to offer evidence to support the plaintiff's
9  claim." *In re 2TheMart.com, Inc.*, 114 F.Supp.2d 955, 959 (C.D. Cal. 2000) (citing
10 *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (emphasis added).
11      Here, Matsumoto specifically alleges that after he signed the Vote, the City
12 retaliated against him by refusing to hire his son. SAC ¶ 56. The allegation is not
13 conclusory as Matsumoto alleges the specific facts upon which his claim relies.
14 Matsumoto provides detailed allegations that his son successfully completed written,
15 oral, and physical tests, ranked among the top five of all candidates, and was also a
16 licensed paramedic which filled the City's specific need at that time. *Id.* Matsumoto
17 alleges that the City's refusal to hire his son caused him to experience significant
18 humiliation, frustration, and anxiety. *Id.* Further, the SAC alleges that Defendant
19 Lonnie Croom, with the City's support, viewed DFA members who signed the Vote as
20 "disloyal" and as though they "betrayed" him. *Id.* at ¶¶ 68-69. The SAC also alleges
21 facts that Croom, with the City's support, intended to punish DFA members who signed
22 the Vote in any way possible. *Id.* at ¶¶ 68-73.
23      These facts, which the Court must accept as true at this stage of the action, and all
24 reasonable inferences drawn in Matsumoto's favor, establish that Matsumoto
25 experienced an adverse employment action as a result of his protected speech activity.
26 Matsumoto expects, as discovery proceeds in this case, that evidence will confirm that
27 Defendants refused to hire Matsumoto's son because Matsumoto signed the Vote.
28 Matsumoto has alleged facts sufficient to state a claim under the law. To the extent the

City suggests that an employer's actions toward an employee's loved one does not qualify as an adverse employment action, the City is wrong on that front as well.

"When a government employee exercises his protected right of free expression, the government cannot use the employment relationship as a means to retaliate for that expression." *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003). "The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases." *Id.* Indeed, "[v]arious kinds of employment actions may have an impermissible chilling effect" and "even minor acts of retaliation can infringe on an employee's First Amendment rights." *Id.* (citing *Rutan v. Republican Party*, 497 U.S. 62, 75-76 (1990)). *See also, Coszalter*, 320 F3d at 975 ("To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind."). To qualify as an adverse employment action, a plaintiff must simply show that defendant's actions were "reasonably likely to deter [him] from engaging in protected activity under the First Amendment." *Coszalter*, 320 F.3d at 976.

An employer's actions against a complaining employee's loved one qualify as adverse employment actions as such conduct is reasonably likely to deter someone from engaging in protected activity. The Supreme Court addressed and analogous issue in *Thompson v. North American Stainless, L.P.*, 131 S. Ct. 863 (2011). In *Thompson,* plaintiff alleged that his termination constituted unlawful retaliation for his fiancé's sex discrimination complaint. *Id.* at 865. Addressing the question of whether plaintiff could prove retaliation by invoking a loved one's complaint, the Court opined, "it is obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id.* at 868. The Court commented that "the significance of any given act of retaliation will often depend on the particular circumstances" and determined that "firing a close family member will almost always" meet the standard of retaliation. *Id.* Applying the *Thompson* holding to the allegations here, it is obvious that Matsumoto might have been dissuaded from signing the Vote if he had known that doing so would prevent his son from obtaining a position with the

**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

1 Department. Matsumoto has alleged facts sufficient to state a Retaliation claim under
2 42 U.S.C. § 1983. The Court must therefore deny the City's Motion.

### E. THE CITY'S REQUEST FOR A MORE DEFINITE STATEMENT IS PROCEDURALLY DEFECTIVE AND UNNECESSARY BECAUSE THE SAC IS NOT UNINTELLIGIBLE AND CLEARLY SATISFIES PLAINTIFFS' PLEADING OBLIGATIONS UNDER THE FRCP

For the first time, having never met and conferred with Plaintiffs' counsel regarding this issue, the City asserts that the SAC "does not clearly identify" which unnamed DFA members "on whose behalf the DFA seeks the recovery of damages." Motion at 6:21-22. The City requests that Plaintiffs provide a more definite statement identifying the DFA's scope of representation. This request is procedurally improper and substantively unnecessary, as the SAC is not unintelligible and Plaintiffs have satisfied their pleading obligations under the FRCP.

First, the City's Motion is procedurally defective. Local Rule 7-3 requires that prior to filing a motion counsel "shall first contact counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." The City's counsel never met and conferred with Plaintiffs' counsel regarding its request for a more definite statement. A review of the City's concurrently filed Declaration of Jay Trinnaman, with meet and confer correspondence attached thereto, confirms that this issue was never addressed. Had the City's counsel met and conferred with Plaintiffs' counsel, as required, counsel could have directed the City to the SAC's allegations which clearly identify the DFA members at issue. SAC ¶¶ 35-38. Further, the parties could have discussed and resolved this issue with a stipulation and amendment if needed. The City's failure to meet and confer as required is fatal to its request here.

Second, the City misunderstands the purpose of a motion for a more definite statement as Plaintiffs have satisfied their pleading obligations under the FRCP. "[D]etailed factual allegations" are not required to state a claim under the FRCP.

14
**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

*Ashcroft v. Iqbal*, 556 U.S. 544, 555 (2007). "A motion for a more definite statement is used to attack ***unintelligibility, not mere lack of detail***, and a complaint is sufficient if it specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Public Employees Ass'n v. Stout*, 946 F.Supp. 790, 804 (C.D. Cal. 1996). Here, the SAC is not unintelligible. The DFA seeks to redress injuries caused to itself and its 49 members who participated in the Vote. SAC ¶¶ 35-38.

The SAC alleges a single claim for relief – Retaliation in Violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 79-86. The SAC details that DFA members who signed the Vote of No Confidence suffered significant and pervasive retaliation at the City's hands because they exercised their First Amendment rights. *Id.* ¶¶ 35-78. The SAC's reference to bringing the "action on behalf of itself as well as its current and former members" is alleged to cover *all DFA members who signed the Vote of No Confidence* as a precaution if, for example, those who signed the Vote are no longer DFA members by the time this matter proceeds to jury trial. *Id.* at ¶ 3. The SAC does not include any allegations that could be construed to request damages on behalf of DFA members who were not involved in the Vote. Had the City simply met and conferred with opposing counsel as required, this issue could have been resolved without wasting judicial resources on a noticed motion. The SAC is neither unintelligible nor vague. It is sufficient as alleged and thus, the Court should deny the City's request for a more definite statement.

## F. IN THE EVENT THE COURT IS INCLINED TO GRANT THE CITY'S MOTION, PLAINTIFFS RESPECTFULLY REQUESTS LEAVE TO AMEND THE COMPLAINT

If this Court is inclined to grant the City's Motion, it should grant Plaintiffs leave to amend the SAC. The Court is free to grant Plaintiffs leave to amend where "justice so requires." Fed.R.Civ.Pro., Rule 15(a)(2). Moreover, courts should grant requests for leave to amend with "extreme liberality." *Owens v. Kaiser Foundation Health Plan,*

15
**PLAINTIFFS' OPPOSITION TO CITY OF DOWNEY'S MOTION TO DISMISS**

*Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Gomper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). Accordingly, should the Court grant the City's Motion, it should also grant Plaintiffs leave to amend the SAC.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiffs Downey Firemen's Association, Local 3473 and Ted Matsumoto ("Plaintiffs") respectfully request that the Court deny, in its entirety, Defendant City of Downey's ("City's") Motion to Dismiss. If however, the Court is inclined to sustain the Motion, Plaintiffs respectfully request that the Court grant them leave to amend the Second Amended Complaint.

DATED: October 27, 2014       BROWN WHITE & NEWHOUSE LLP

By *s/ Nannina L. Angioni*
THOMAS M. BROWN
NANNINA L. ANGIONI
Attorneys for Plaintiffs DOWNEY
FIREMEN'S ASSOCIATION-LOCAL 3473,
et al.